OPINION
{¶ 1} This is an appeal from a decision of the Probate Court of Holmes County relating to the valuation placed upon real estate of the deceased.
 STATEMENT OF THE FACTS AND CASE {¶ 2} The initial valuation of the farm property of Margaret Schlegel in the inventory was $740,000.00.
 {¶ 3} Exceptions to the inventory were filed by Roy W. Schlegel, a beneficiary.
 {¶ 4} In addition, the executor, Robert E. Schlegel also filed a declaratory judgment action as to the value of such real estate.
 {¶ 5} The court consolidated the exceptions and declaratory judgment action.
 {¶ 6} A partial Civil Rule 56 motion was filed by Roy W. Schlegel.
 {¶ 7} On January 28, 2005, an entry was issued.
 {¶ 8} The following facts found by the court and its conclusions based thereon were:
 {¶ 9} "Defendant Roy W. Schlegel demands a new appraisal. He alleges the Executor abused his fiduciary authority by manipulating the appraisal, a serious allegation denied by the Executor.
 {¶ 10} "Defendant first claims Paragraph 3(G) in Margaret S. Schlegel's will manifests her intent that the parcel in question be maintained as a farm. Based upon that precatory language, he contends it was inappropriate to use, for the Inventory, an appraisal based upon dividing the property into lots.
 {¶ 11} "He cites Robert E. Schlegel's testimony in which the Executor admits he believed the initial Gil Snyder appraisal figure of $400,000.00 for the entire interest was too low. But after stating it would be improper to suggest a figure to the appraiser, he then admits he directed Mr. Snyder to recompute the appraisal based upon dividing the parcel into lots. It appears the second figure of, $600,000.00 was again too low for the Executor.
 {¶ 12} "At the same time the Executor was working with Gil Snyder, Anna Mae Shoemaker, sister of the Executor, contracted with Dave Kaufman Realty to conduct another appraisal. The Kaufman appraisal figure of $740,000.00, also based on dividing the property into lots, was subsequently adopted by the Executor and used in the Estate inventory.
 {¶ 13} "The will of Margaret S. Schlegel provides if Roy W. Schlegel purchases the parcel from the Estate, the net proceeds from the sale are to be split equally between Robert E. Schlegel and Anna Mae Shoemaker. Defendant's second contention is because of that provision, the Executor engaged in self-dealing and put his own pecuniary interests above his fiduciary obligations when he sought an ever-increasing appraisal amount.
 {¶ 14} "The Executor responds by stating precatory provisions'. . . in a will have no legal effect, and do not bind anyone.' The Court agrees. However, the Court must remain mindful of the overarching importance of ascertaining and carrying out the intent of the testator. Here the testator clearly intended and desired the continued use of this parcel as a farm.
 {¶ 15} "The Executor also argues the $740,000.00 figure should be maintained because Roy W. Schlegel stated it was a fair value in his November 2004 deposition. This is analogous to the Executor saying the first and second Snyder appraisal figures were too low because of his work experience. The Court is not going to rely upon the. Executor's personal opinion as to the value of this parcel. Neither is the Court inclined to hold Roy W. Schlegel to a figure that he may personally consider to be fair. Frankly, both of their personal conclusions as to the property's value are irrelevant.
 {¶ 16} "Finally, the Executor Claims the Court should deny the request for a new appraisal because the most accurate valuation of the property will be obtained through the pending land sale proceeding (Case 04MS018). The Court concurs that a public auction is a reliable means to determine the fair market value of a parcel; indeed, it defines fair market value. However, the will of Margaret S. Schlegel provided Roy W. Schlegel the right to purchase the property at the appraised value, not at public auction. The Court recognizes the concern of Roy W. Schlegel that if the property is sold at public auction in the usual manner, i.e., either whole or in lots, whichever brings the highest return, he may not be able to purchase the property at a price susceptible to continued farming.
 {¶ 17} "Analysis
 {¶ 18} "The Court is troubled by the actions of the Executor in seeking an ever-higher appraisal. The Court finds those actions constituted an improper manipulation of the appraisal. The Court further finds that as a result of valuing the property based upon its division into lots, the Executor ignored the clear desire of the testator.
 {¶ 19} "Because of his personal pecuniary interest in a high appraisal, from the time of his appointment the Executor was challenged to balance his personal financial concerns against his fiduciary obligations. But such divided loyalties are not uncommon in the administration of estates. Though admittedly difficult, the Court believes the Executor could have balanced those competing interests, but he failed to meet that challenge. Accordingly, the Court finds a new appraisal of the 100.37 acre parcel is warranted.
 {¶ 20} "The Executor hired Gil Snyder to appraise this parcel because he ". . . has a good reputation, as far as an appraiser, throughout this whole area." The first value Mr. Snyder placed upon the parcel, i.e., $400,000.00, was based upon its continued use as a farm and calculated before the Executor improperly directed Mr. Snyder to increase the value by dividing the property into lots. Accordingly, the Court directs that the initial figure of $400,000.00 will be combined with the new appraisal, and the average of those two amounts will be used by the Executor in the Estate Inventory.
 {¶ 21} "* * *2. The demand of Roy W. Schlegel for a new appraisal is granted. The Court will contact another appraiser and arrange to have the appraisal completed. That appraisal will be performed on the assumption that the 1.00.37 acre tract will be valued as ongoing farm property and not divided into lots.
 {¶ 22} "3. The figure obtained through the new appraisal will be combined with the $400,000.00 figure, and the average of the two amounts will be used by the Executor in the Estate Inventory."
 {¶ 23} The provisions of the Will of Margaret S. Schlegel relating to the subject farm, excluding the legal description thereof contained in such Will are:
 {¶ 24} "I give to my son, Roy W. Schlegel, the first right and option to purchase the farm real estate known as the `home place' being more fully described as follows:"
 {¶ 25} The precatory language to which the court refers is contained in paragraph G of such Will:
 {¶ 26} "All of the remainder and residue of my estate of every nature, description and kind, wheresoever the same may be situate or located, whether real, personal or mixed, present, contingent or future, after the payment of any and or delivery of the above bequests and devises made, I give, devise and bequeath to my children, Robert E. Schlegel, Roy W. Schlegel and Ann May Shoemaker, share and share alike, per stirpes. It is my desire and hope that my said children who shall survive me and in accordance with this request shall make every effort to retain in the Schlegel family the farm known as the `home place' in order that said farm may represent my deep interest in the lands and what it represents so that it may continue to be enjoyed by my future descendants and their heirs."
 {¶ 27} Appellant raises one Assignment of Error:
 ASSIGNMENT OF ERROR {¶ 28} "I. THE PROBATE COURT ERRED WHEN IT RELIED SOLELY UPON THE PRECATORY LANGUAGE CONTAINED IN THE DECEDENT'S WILL AND SET THE VALUE OF THE REAL PROPERTY IN THE DECEDENT'S ESTATE BASED UPON ITS CONTINUED USE AS A FARM."
 I. {¶ 29} Essentially, the issues in this case are whether the trial court's decision relative to the appraisals was statutorily correct and whether the precatory words contained in the Will, even though such clearly represent the wish of the deceased, are obligatory. We note that the court recognized such words as non-binding but some indication of reliance thereon seems to be indicated.
 {¶ 30} While Appellee argues that the correct appraisal is the highest and best use, such standard is not applicable to an estate appraisal.
 {¶ 31} Revised Code § 2115.02 provides:
 {¶ 32} "Within three months after the date of the executor's or administrator's appointment, unless the probate court grants an extension of time for good cause shown, the executor or administrator shall file with the court an inventory of the decedent's interest in real estate located in this state and of the tangible and intangible personal property of the decedent that is to be administered and that has come to the executor's or administrator's possession or knowledge. The inventory shall set forth values as of the date of death of the decedent. If a prior executor or administrator has done so, a successor executor or administrator need not file an inventory, unless, in the opinion of the court, it is necessary.
 {¶ 33} "Any asset, the value of which is readily ascertainable, is not required to be appraised but shall be included in the inventory."
 {¶ 34} In Re: Estate of Berman (1996), 118 Ohio App. 354, is cited for the proposition that a probate court, under its plenary power, has the authority to revise an appraisal value.
 {¶ 35} This Court does not question that such plenary power, when applicable, exists. However, Berman is not in point in this case. The trial court in Berman made the determination that a note of the executor appraised at no value, on exceptions being filed, may have value notwithstanding such appraisal. The appraisal was based on the statute of limitations and there was no evidence as to matters such as payments made which would toll the statute of limitations.
 {¶ 36} Here, the court found that the executor had manipulated the appraised value because it was to his financial gain if his brother had to pay a higher price upon exercising his option. The validity of such finding is not being appealed.
 {¶ 37} While the court under its plenary power clearly, under the circumstances, found as to manipulation of value, had the authority to order a new appraisal, it went beyond its statutory authority by ordering averaging of the appraisals. In effect, rather than utilization of the value as of the date of death, the court created its own appraisal.
 {¶ 38} In this regard, we find error and remand for a determination of the date of death value.
 {¶ 39} The secondary issue is the effect of the precatory language of the testator as to the continued existence of the farm in the family.
 {¶ 40} It must be noted that even with the expressed wish as to the farm continuing in the family and down to subsequent generations, such would not occur if Roy W. Schlegel did not exercise his purchase option for any reason sold such farm after purchase.
 {¶ 41} Of course, there are limitations on the control in the future of such land by the testatrix.
 {¶ 42} For example, the Ohio Supreme Court stated in The Society forCrippled Children and Adults, Inc. V. McElroy, Atty. Gen. (1963),175 Ohio St. 49:
 {¶ 43} "This court has held that, where land is devised upon condition that the devisee shall not sell it, such a restraint is void as repugnant to the devise and contrary to public policy. Anderson v.Cary (1881), 36 Ohio St. 506, 38 Am. Rep. 602. See also Hobbs v. Smith (1864), 15 Ohio St. 419.
 {¶ 44} Also, in a case wherein the testator specifically directed the employment of a specific attorney by the executor, even using the words "shall be required" the Ohio Supreme Court stated that such precatory language was merely advisory and not binding. In Re: Estate ofDeardoff (1984), 10 Ohio St.3d 108.
 {¶ 45} In addressing precatory language, the Twelfth District Court of Appeals, Clermont County, held in In the Matter of John Colby Eccles,dec'd (April 17, 2000),12th Dist. App. No. CA99-05-041, (not reported in N.E. 2d), that precatory words are presumed to indicate merely a request or expectation.
 {¶ 46} We agree with these conclusions as applied to the Will of Margaret S. Schlegel and find that such wish as expressed is not legally binding and even though these are the desires of the deceased, such cannot be considered in the farm valuation, if such occurred.
 {¶ 47} We therefore sustain the assignment of error and reverse the decision of the trial court and remand for further proceedings in accordance herewith.
By: Boggins, J., Wise, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Holmes County Court of Common Pleas is reversed and remanded for further proceedings in accordance herewith.
Costs assessed to appellees.